DECISION
{¶ 1} Relator, Carl A. Gilbert, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order declaring an overpayment of permanent total disability compensation in the amount of $127,321.13 and to enter an order that denies the motion of the Ohio Bureau of Workers' Compensation for a declaration of an overpayment.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No objections to that decision have been filed.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Writ of mandamus denied.
Bryant and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Carl A. Gilbert, : Relator, :
v. : No. 05AP-1175
Industrial Commission of Ohio et al., : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 29, 2006 Agee, Clymer, Mitchell Laret, and Robert M. Robinson, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
Bricker Eckler LLP, Thomas R. Sant and Becky L. Ramseyer,
for respondent Volunteers of America of Central Ohio.
 IN MANDAMUS {¶ 4} In this original action, relator, Carl A. Gilbert, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order declaring an overpayment of permanent total disability ("PTD") compensation in the amount of $127,321.13 and to enter an order that denies the motion of the Ohio Bureau of Workers' Compensation ("bureau") for a declaration of an overpayment.
Findings of Fact:
 {¶ 5} 1. On April 12, 1998, relator sustained an industrial injury while employed with respondent Volunteers of America of Central Ohio, a state fund employer. The industrial claim is assigned claim No. 98-369965.
 {¶ 6} 2. Following a commission determination that relator is permanently and totally disabled, the bureau began payments of PTD compensation in early 1999.
 {¶ 7} 3. On June 23, 2005, the bureau issued an order stating:
The Ohio Bureau of Workers' Compensation (BWC) has made the following decision. The claimant has received benefits to which he or she is not entitled and is found to be overpaid.
The injured worker received duplicate Permanent Total Disability payments during the period of 11/8/1998 through 3/19/2005. Total amount received was $257,751.09. Total amount entitled to $130,429.96.
The total overpayment amount in this order is $127,321.13.
* * *
This decision is based on: overpayment worksheet (attached).
 {¶ 8} 4. Attached to the bureau's order was a six-page computer printout indicating that it relates to "Payments Received for Carl Gilbert, 98-369965."
 {¶ 9} 5. The six-page printout presents information regarding over 200 state warrants issued to relator for payment of PTD compensation beginning with the first warrant issued January 6, 1999 to the last warrant issued March 24, 2005. The printout indicates that all warrants were delivered "EFT," i.e., by electronic fund transfer.
 {¶ 10} 6. Notably, the printout indicates the following three warrants issued on November 26, 2003 in the following amounts for the time periods indicated:
Warrant No. Amount Time Period
 H459818 $14,957.57 12/31/98 — 09/11/99 H459819 $83,762.40 09/12/99 — 08/09/03 H459820 $ 4,766.86 08/10/03 — 11/15/03
 {¶ 11} 7. The final page of the printout states that total PTD paid is $257,751.09 while the PTD entitlement is $130,429.96. Subtracting the latter from the former, the printout shows an overpayment of $127,321.13.
 {¶ 12} 8. The printout document itself does not identify the bureau employee who generated it, nor does it purport to be signed by anyone.
 {¶ 13} 9. On June 30, 2005, relator, through counsel, administratively appealed the bureau's June 23, 2005 order to the commission.
 {¶ 14} 10. By letter to the commission's hearing administrator dated June 30, 2005, relator's counsel requested:
I write today in regard to my client, Carl Gilbert. Enclosed is a BWC Order declaring a substantial overpayment in Mr. Gilbert's claim. The only information attached to the order was a computer printout of checks allegedly cashed by my client.
What I am requesting from you today pursuant to Ohio Revised Code, § 4123.08, is to issue a subpoena to the Bureau of Workers' Compensation for copies of canceled checks from Mr. Gilbert. More specifically, I am interested in the following Warrants: H459818, H459819, and H459820. All these Warrants were apparently issued November 26, 2003, and allegedly cashed by Mr. Gilbert. Please ask the BWC to produce photocopies of the signed Warrants.
 {¶ 15} 11. By letter mailed July 6, 2005, the hearing administrator informed the parties as follows:
The Columbus Hearing Administrator is in receipt of the Injured Worker's subpoena request filed 06/30/2005. Your request to subpoena the Bureau of Worker's Compensation for copies of cancelled checks from Mr. Gilbert is denied for the reason of lack of good cause shown.
 {¶ 16} 12. The record contains the following bureau claim note dated 08/26/05:
OHIO BUREAU OF WORKERS' COMPENSATION ASSIGNED SERVICE OFFICE: 17 TEAM: 04 ASSIGNED TEAM MEMBER: 07 09-01-2005
Claim Number: 98-369965
NOTES FOR CLAIM: 98-369965
08/26/05 PTD PLAN AND OVERPAYMENT DETAILS
The PTD plan was originally built 1/5/1999 at the rate of $410.60. On 8/19/2003, the LSA was paid and the PTD rate was reduced to $340.69. Payment was issued through 11/15/2003 without incident until 11/25/2003 when it appears that due to a[n] RTW date being removed from the claim, a system error occurred, which caused duplicate payments. On 11/26/2003 payment was issued for $14947.57 covering the dates from 12/31/1998 to 9/11/1999, $83762.40 covering the dates from 9/12/1999 to 8/9/2003, $4766.86 covering the dates from 8/10/2003 to 11/15/2003. All three of these period[s] had previously been paid causing an overpayment of $103486.83.
From 11/16/2003 through 3/19/2005 duplicate deposits were made every 2 weeks totaling $47668.60 and the IW was entitled to $23834.30 for a total overpayment of $127321.13.
The error was discovered on 3/22/2005 and since then the IW has been paid the correct amount.
 {¶ 17} 13. Following a September 2, 2005 hearing, a staff hearing officer ("SHO") issued an order declaring an overpayment of PTD compensation. The SHO's order states:
The Staff Hearing Officer agrees with the reasoning and decision of the Administrator in declaring an overpayment of permanent and total disability compensation in the amount of $127,321.13. This is based on the 08/26/2005 Bureau of Workers' Compensation claim note and the printout of payments made in this claim. These documents demonstrate that the claimant was paid duplicate amounts for the following time periods and creating the following overpayments:
1) From 12/31/1998 through 09/11/1999 in the amount of $14,957.57;
2) From 09/12/1999 through 08/09/2003 in the amount of $83,762.40;
3) From 08/10/2003 through 11/15/2003 in the amount of $4,766.86; and
4) From 11/16/2003 through 03/19/2005 in the amount of $23,834.30.
These figures provide a total overpayment of $127,321.13.
The Staff Hearing Officer orders that this overpayment is to be recouped pursuant to the non-fraud provisions of Ohio Revised Code section 4123.511(J).
 {¶ 18} 14. On November 3, 2005, relator, Carl A. Gilbert, filed this mandamus action.
Conclusions of Law:
 {¶ 19} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 20} The issue that relator asks this court to determine is whether the printout constitutes some evidence upon which the commission can rely to support its declaration of an overpayment.
 {¶ 21} Here, relator argues that the printout does not constitute some evidence because it was allegedly prepared by "an unnamed source working in an unnamed department." (Relator's brief at 4.) Relator also alleges that the printout is not "authenticated." Relator seems to claim here that the printout must be signed or even notarized, presumably by the bureau employee who prepared it. (Relator's brief at 2.) Relator also points out that the printout is hearsay evidence but relator does not claim that the hearsay rule is applicable to commission proceedings. (Relator's brief at 4.)
 {¶ 22} It is well-settled law that issues not raised administratively when there was an opportunity to do so cannot be raised in mandamus. State ex rel. Quarto Mining Co. v. Foreman
(1997), 79 Ohio St.3d 78, 81-84; State ex rel. BermanIndustries, Inc. v. Indus. Comm., Franklin App. No. 04AP-1254, 2005-Ohio-5083.
 {¶ 23} Here, relator does not contend that he administratively challenged the authenticity or evidentiary admissibility of the printout, nor is there any evidence in the record to suggest that relator did so.
 {¶ 24} Counsel's June 30, 2005 letter to the hearing administrator indicates receipt of the computer printout and requests copies of three warrants, but there is no challenge or complaint regarding the authenticity of the computer printout. There is no complaint in the letter that the printout is unsigned or that the person who prepared the document is not identified.
 {¶ 25} While relator's counsel was not required to raise the issue presented here in his June 30, 2005 letter, he was clearly required to raise the issue at the September 2, 2005 hearing before the SHO in order to preserve the issue for mandamus review.
 {¶ 26} The September 2, 2005 hearing was not recorded and thus we do not have a transcript of the proceedings. We know from the SHO's order that relator and his counsel appeared and that the SHO did not address in his order the issue relator presents here. The presumption is that the SHO did not address the issue in his order because relator failed to raise the issue administratively. It appears that relator is simply attempting to raise the issue in the first instance through this mandamus action.
 {¶ 27} Because relator has failed to show that he raised administratively the issue he now raises in mandamus, his request for a writ of mandamus must be denied.
 {¶ 28} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.